Appellant. Mr. Bravin, for the Appellant. Mr. Buchholz, for the Appellant. Good morning, Your Honors. Mark Bravin, for the Republic of Ecuador. And with the Court's State is immune from the jurisdiction of our courts unless a statutory exception applies. Congress made the judgment that when a foreign sovereign enters into an arbitration agreement it waives its sovereign immunity. So for the waiver to be effective, an arbitration agreement must exist. Absent the agreement, the sovereign is immune. It's a jurisdictional determination that our courts must make for themselves. In no case has a federal court ever delegated the determination of jurisdiction over a foreign sovereign to arbitrators sitting in a foreign country. And yet that is what the District Court did below. Can I just make sure I understand how you think whatever agreement there was here worked? I understand you don't disagree that in the end there was some kind of agreement just that didn't cover this as an investment. Is that right? No, I don't agree, Your Honor. The treaty is not an agreement to arbitrate. But what about the argument that the treaty is an offer and that the notice is an acceptance? The treaty is an offer to arbitrate when notice is given to arbitrate a dispute within the terms of the treaty. That did not happen here. Ecuador did not intend to arbitrate Chevron's notice. These are claims over a ghost of an investment that ended five years before the treaty went into effect. So there was no agreement between Ecuador and Chevron. So the question in some ways relates to the scope of your offer, right? Is that right? They could certainly have accepted. Imagine it was an investment that happened yesterday in a new mine, okay? Is there anything more that Chevron in a new oil field or whatever it is Chevron's doing here? If their notice was we want to arbitrate about this brand new investment, would that make an agreement? Yes, it would, Your Honor, because the investment exists on or after the effective date of the treaty as required by Article I. And that's because within the scope of the offer, your offer was new investments? New or existing investments. Yes, new or existing investments. Correct. All right. So all then they have to do is come within those terms. Correct. Okay. So here's my question. Imagine, just for the moment, it's a hypothetical, that the treaty offer is we will agree to arbitrate investment disputes and we will agree that the arbitrator will determine whether a particular asset is an investment. If that were the offer, in just those words, we offer to agree to arbitrate investment disputes and we agree that the arbitrator will determine what is an investment. And Exxon came in and said we accept that offer with respect to these materials, these issues. Would that be okay? Still no. Why not? Because the offer to delegate to arbitrators, the determination of whether the offer was in the scope, requires an investment dispute. You must find first an investment dispute, an agreement to arbitrate the type of dispute that is in the notice of arbitration. But you're saying... It's not an agreement to arbitrate. There is no delegation. You're saying there's no way for a state to agree to let the arbitrators decide the scope of the agreement? No way? Notwithstanding how much clarity they present? Your Honor, I'm not saying that. I'm saying that there is no evidence in this treaty that the United States... I'm not asking you to do that. I'm asking you a hypothetical. Okay. As a hypothetical, is it possible for a state to say we will agree to arbitrate investments and moreover, we will agree that whether something is an investment will be decided by the arbitrator. Not by us, but by the arbitrator. I don't know the answer, Your Honor. Well, it's very important. If the answer is no, that's not okay. I'd like to know why it's not okay. It's not okay because the issue of whether there is an agreement to arbitrate in the first place is something that does not belong in the arbitrator's domain. It belongs in this court's domain. Isn't that up to Ecuador? Can't Ecuador agree that whether something is an investment or not is up to the arbitrator? Why can't they agree to that? In principle, parties to a treaty can agree that arbitrators will decide whether there is an agreement to arbitrate. Right. They did not do it so here. I understand. Okay. So, why isn't the incorporation of the UNCI... By the way, does this have a pronounced acronym? UNCITRAL. UNCITRAL. Thank you. That the UNCITRAL provisions apply, why isn't that an agreement of that kind? The UNCITRAL rules only come into play once there is an agreement to arbitrate. That's what this court found in Vigigroup v. Argentina. The question wasn't reached by the Supreme Court, but the Supreme Court made an important distinction between whether a sovereign has agreed to arbitrate and when it has agreed to arbitrate. But didn't the Supreme Court say that they cite the UNCITRAL provision, Article 23.1, and they cite it in a paragraph where they say, I'm trying to remember how they say it, but they talk about whether a condition by contract is a matter of such elevated importance that it is to be decided by the courts. And they talk about typically that substantive provisions are of such elevated importance as opposed to these procedural. I think the provision is... the clause is at page 1210 where the Supreme Court says, and the treaty itself authorizes the use of international arbitration associations, the rules of which provide arbitrators shall have the authority to interpret provisions of this kind. And it's in the paragraph that Judge Wilkins is talking about. So why doesn't that put into question what we said in Vigigroup, if that's what we said in Vigigroup? Well, Your Honors, in Vigigroup, the condition that was at issue in the case was whether the foreign state had a right to insist on litigation in its own courts for 18 months before arbitration could commence. There was no dispute, no disagreement over whether there was an agreement to arbitrate, only when it could take place. The Supreme Court noted that the question of whether there's an agreement to begin with is something else altogether. It is an issue for this Court to determine based on the Foreign Sovereign Immunities Act. But isn't... but doesn't the Supreme Court say, even if it's dicta, that that question can be delegated to arbitrators, and that's why they cite UNCTRAL 23-1, including this very language here about an arbitral tribunal shall have the power to rule on its own jurisdiction, including whether there is the existence or the validity of an arbitration agreement? What the Court held was, once there is an agreement to arbitrate, yes, the determination of whether the condition to start the arbitration has been met is delegated to the arbitrators. That's the import of the delegation provision. The Supreme Court did not, even in dicta, say that the question of whether arbitration has been agreed to in the first place How do you draw a distinction between scope questions and what you're conceiving of as an antecedent question about whether an agreement has been effected in the first place? Because it just seems like every question that you could say, at least as a matter of description, goes to scope, is actually a question about whether the agreement exists in the first place. Because if it isn't within the scope of the agreement, well, then there's not an agreement to do that thing. So it just seems like there's a circularity question here because a lot of things within the common vernacular would seem to be arbitrability questions, i.e., they go to scope of the agreement, can be recast as questions about whether there was an agreement to arbitrate this thing in the first place. Well, Your Honor, this is a case of first impression. This is the only time when a sovereign has contested the initiation of arbitration as coming within its agreement to arbitrate. In Phoenix Consulting, this court addressed the question of whether the contract on which arbitration was commenced was a fraud and a forgery. That was a determination that was then remanded to the district court. That's the only case in all of the cases that are cited in the briefs that does it all go into the question of formation. This case squarely presents the question of formation. But why isn't it? I guess the question is, even if we agree with you, which I do, that the question we have to consider as a matter of jurisdiction, whether Ecuador has agreed, why isn't it sufficient evidence that they agreed that they have a BIT, I take it that's the pronunciation of that acronym, that incorporates UNCTRAL. Why isn't that enough for us to conclude that they de novo, by preponderance, that there's an agreement with respect to arbitrating and with respect to arbitrability being left to the arbitrators? The existence of the BIT and the award that purported to be based on the BIT are not enough. This court must determine that the terms of the treaty's offer of arbitration were accepted. Article 1 refers to the types of investments that are covered by the treaty. If the court determines that Chevron's claims over a defunct investment and based only on vestigial lawsuits constitutes an investment, then there is an investment dispute here. We don't think so, and the district court certainly didn't even touch that question. The treaty's purpose and intent is reflected in Article 12, where only disputes existing on or after the effective date, only investment disputes existing on or after the effective date, are within the scope of the offer. So it's not enough to say, as the district court did, well, there's a BIT and there's an award. No, it's important to look at the conditions of the offer and determine whether they were accepted. Can I ask, on the sovereign immunity question, why isn't the BIT enough? Because regardless of – I take it that there's this other argument that says that the agreement was consummated at a point in time at which Chevron invokes, and at that point there's an acceptance. But why isn't, as I'm reading the text of the provision, it says, in which an act went abroad either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences, et cetera, et cetera. And then the later provision, which is talking about confirmation, is tracking back to this kind of agreement, i.e. an agreement made by the foreign state for the benefit of a private party. Why isn't that exactly what happened here? Well, for two reasons. The part of the statute that Your Honor quotes says to submit to arbitration all or any differences. And so if Ecuador limited the differences that it agreed to submit to arbitration, which it did by the temporal limitation and by the definition of investment, then it's not enough. I don't understand that. I don't understand that because it still would be an agreement made by the foreign state, Ecuador, for the benefit of a private party, meaning any private party who has an investment, to submit to arbitration all or any differences. And then they would have agreed to submit all or any. There are some differences that are within the scope of the arbitration agreement. If the definition of investment had been all-encompassing and did not have a temporal limitation, then that would have been an agreement to arbitrate all or any differences. The statute also requires, in the next words after Your Honor read, with respect to a defined legal relationship. And the treaty defines the legal relationship between the nationals of the United States and Ecuador in their ability to commence arbitration by accepting an offer. They must fit within the terms of the treaty, otherwise they don't qualify. So just to be clear, these two arguments that you're making now, they both go to whether the BIT, in fact, encompasses in scope this particular dispute. They're not making an antecedent point that the BIT, by nature, can't qualify as the type of agreement that's referred to by this provision. Because I take that to be the argument you were making in your briefs, that there has to be an agreement between Ecuador and Chevron. The agreement between Ecuador and the United States just can't qualify. I thought that was the argument you were making in your briefs. That's part one of two parts. The second part is that Ecuador must come forward with a dispute that falls within the scope of the treaty. If it doesn't, there is no agreement to arbitrate that dispute. It's an issue of formation. In this case, it just so happens that answering that jurisdictional formation question also will answer the scope question. But jurisdiction comes first, and it comes de novo. And the district court got it wrong, and we're asking this court to look beneath the BIT to the terms of the offer to arbitrate. Maybe I'm pursuing this unnecessarily, but is there a difference between the two theories, one theory being that the treaty itself is for the benefit of the investors, for private parties, and therefore what's ever in the treaty is what Ecuador has waived or agreed to, and the second theory, which is the BIT is an offer to agree and the notice is the acceptance. Does it make any difference which of those two approaches we look at from a theoretical point of view? It makes no difference, provided that in the first approach, you focus on which nationals of the other state were intended to be encompassed by the treaty. It was not an agreement to arbitrate disputes from the last century. Right. But that would apply to either one, either theory, right? Right. Okay. If Your Honor has had no further questions, I'll reserve the rest of my time. You'll reserve any additional time that I give you, because we're over. But we have a tendency to give you additional time. Go ahead. Good morning, Your Honor. It's Jeffrey Buchholz for Chevron and Texaco. May it please the Court. Chief Judge Garland, your hypothetical is this case. The arbitration agreement here, the outstanding offer to arbitrate in the BIT gives U.S. companies, there's no dispute Chevron is a U.S. company within the meaning of that provision, the unilateral right to elect, to settle a dispute, defined as an investment dispute. That's the term in Article VI of the treaty, by arbitration, including by electing arbitration under the unsuitable rules. And that's exactly what the notice of arbitration that Chevron and Texaco submitted did. Ecuador's argument, both as to jurisdiction and as to the merits under the New York Convention, depends on this notion that our notice of arbitration didn't accept their offer to arbitrate according to its terms and instead made a counteroffer. When Your Honors look at our notice of arbitration, you will see that that is just not true. Our notice of arbitration, which starts at pages 787 of the Joint Appendix, simply says we are a U.S. company. Again, there's no dispute about that. We have an investment dispute, that's the defined term in Article VI of the treaty, defined, among other things, to mean an alleged breach of the treaty with respect to an investment. We allege such a breach. And we accepted their offer that we unilaterally could elect arbitration under Article VI and to do so under the unsuitable rules. Can I ask you, is there any, there seems to be a lot of labor in some of the case law. Sents over this issue, majorities over this issue, is there any real difference between conceptualizing the bid itself as the waiver or conceptualizing the bid as the offer and your notice as the acceptance? No, Your Honor, I don't think there's any real difference. Why is there debate about this question? Why are some Supreme Court justices explaining that the majority doesn't get it because they don't understand that there's offer and acceptance rather than just a treaty? What's going on here? Well, I mean, I think the Second Circuit got it exactly right in Chevron against Ecuador where it said, Judge Lynch's opinion said, that's a distinction without a difference. I think that's exactly right. Isn't there at least a bit of a difference in the following sense that, sorry, just if you can hold your thought, I know you were getting ready to make a point, but just through this lens, which is that if the bid itself does the work, then you're done with sovereign immunity. So whatever, part of what's going on here is we're dealing with sovereign immunity, so there are some canons and general principles that come into play because you're dealing with sovereign immunity and a waiver of sovereign immunity. So if the bid itself does the work, then the offer and acceptance, we can talk about scope and things of that nature that come into play when we say what you accepted, but that is outside the canon of sovereign immunity if the bid itself already does all the work. And now go ahead with your answer. Well, Your Honor, I still think it's really a distinction without a difference because sovereign immunity under A6 turns on whether this is an action brought to confirm an award made pursuant to an agreement to arbitrate. Whether the agreement to arbitrate is conceived of as being the bid by itself for the benefit of private parties like U.S. companies like Chevron, or whether the agreement to arbitrate is conceived of as being the bid plus our notice of arbitration, I really don't think makes any difference. I think the Second Circuit got that exactly right. I think it still has to have agreed not only that there must be an investment dispute, but they have to have agreed that they're going to leave it to the arbitrators to decide what's an investment dispute. Exactly. That's why I said, Judge Garland, that this case is sure hypothetical because that's exactly what adopting the Ancetral Rules does. And I think, Judge Wilkins, you pointed out the dictum in the Supreme Court's decision in BG Group to that effect, but it's also important here to recognize that it's not just the dictum in BG Group. It's this Court's decision in BG Group on an issue that the Supreme Court didn't disturb. It's the Ninth Circuit's decision in Oracle. It's the Second Circuit's decision in Chevron. And in this case, the point is not disputed. Ecuador explicitly conceded that adopting the Ancetral Rules gives arbitrability to the tribunal, which means that any court that comes into play later has to review the tribunal's decision on arbitrability with great deference. But if that were all that were required, just having a bit that incorporated the Ancetral Rules were enough, then why didn't the Supreme Court just say that? Why did it need to talk about this distinction between procedural versus substantive? And because the agreement that they were reviewing was an agreement that incorporated the Ancetral Rules there, right? Because of the way the case was presented to the Court, Your Honor. Taking one step back from BG Group, the Supreme Court has created this dichotomy between competing presumptions of who decides. One category is arbitrability, which really means substantive arbitrability. The other category is procedural preconditions. The Supreme Court has said in first options and other cases that procedural preconditions are presumptively for the tribunal to decide, whereas substantive arbitrability is presumptively for the court to decide. Those are just presumptions. And even if something were classified as going to substantive arbitrability, you can flip that presumption by adopting rules like the Ancetral Rules, giving substantive arbitrability to the tribunal. And that's the dictum in BG Group. But the way the question was presented to the Supreme Court in BG Group was, is this a procedural precondition to arbitration, in which case it's presumptively for the tribunal and you don't have to worry about adopting the Ancetral Rules flipping that presumption because the presumption starts out that it's for the tribunal, or is it an issue of substantive arbitrability? And then the important question that the Court resolved is, does the fact that this is in a treaty as opposed to a private agreement make any difference to the standard that applies? The Court said no, it doesn't make any difference that it's a treaty. And the Court classified the 18-month local litigation provision at issue there, which is different from what we have here, as a procedural precondition and therefore presumptively for the arbitrator. Here, we're not saying that whether our claims were arbitrable is in the first option sense presumptively for the arbitrator. We agree that that's an issue of substantive arbitrability, but all that means is adopting the Ancetral Rules to give the tribunal the authority to decide that question means that the tribunal is supposed to decide that question. That's what Ecuador bargained for. Ecuador didn't bargain for, in the bit, arbitrating only the disputes that Ecuador might later agree when the individual dispute was presented were arbitrable. Ecuador agreed to arbitrate disputes that the tribunal, applying the Ancetral Rules, if that's what the U.S. company elected, would decide were arbitrable. Ecuador didn't agree to arbitrate only disputes that it would agree involved in investment as defined by the treaty. It agreed to arbitrate disputes that the tribunal, applying the Ancetral Rules, would find involved in investment as defined by the treaty. That's the bargain Ecuador made, and that's exactly what it got. It got a decision by the tribunal. I would add a unanimous, well-reasoned, thorough decision by the tribunal on that arbitrability question, and there's no basis for Ecuador to shoehorn that now into FSIA jurisdiction. My friend said that that's an issue of first impression. I would submit, Your Honors, and maybe, Judge Garland, this answers your question about why there's been so much labor about this. In almost every investment arbitration against a state, the state raises some defense to jurisdiction before the tribunal, whether it's the definition of investment, whether it's the nationality of the claimant, whether it's temporal effect, whether it's all of the above and other stuff. It's routine, beyond routine, for states to challenge arbitral tribunals' jurisdictions in bid arbitrations. And what the U.S. foreign bid, which this is, does, is it allows the U.S. company to adopt, to elect arbitration pursuant to institutional rules that give the tribunal the authority to decide that question. Have there been any questions under a bid like that, that adopts an unsatural rule where, let's say, one side or the other tries to go to court, and stay the arbitration, and have the court decide at the outset the issue of arbitrability, and the court says, no, we can't do that, we have to wait until one side or the other has to confirm the arbitration rule? Yes, Your Honor. I think, if I understand Your Honor's question correctly, I think the Second Circuit's Ecuador against Chevron case is such a case where there, Ecuador's argument was that Chevron had waived the right to invoke arbitration. It's the same bid, the exact same bid, so we're not just talking about similar language. It's this bid. Ecuador argued that Chevron waived the right or was stopped from invoking arbitration under this bid. It's not a foreign sovereign immunity's argument, right, in that case? Correct. Ecuador didn't frame it as a foreign sovereign immunity. I thought your point, maybe you didn't get a chance to finish it, was that the reason that this is a question of first impression is no state has previously thought that this has anything to do with jurisdiction. This is just an argument of a convention. Exactly. This is the first case I'm aware of where a foreign sovereign has had the clever but ultimately, I would submit, unsuccessful idea of repackaging a scope defense to arbitrability as an FSIA jurisdictional argument. So that's the reason there aren't cases that address that issue is because it didn't occur to any state to make the argument until this case. And I think, again, coming back to the Second Circuit's Chevron against Ecuador case, just to finish that thought, if I may, that court explained exactly under this bit how an agreement is formed and it rejected Ecuador's attempt to reframe a scope challenge as a challenge to the existence or the validity of an agreement. What Ecuador argued there was that Chevron had waived the right or was stopped from invoking the arbitration agreement in the bit by Chevron's conduct, and Ecuador said, the unsatural rules don't come into play because there's no agreement because the Chevron can't validly invoke the arbitration offer in the first place. The Second Circuit said, we're willing to assume that Ecuador's waiver and estoppel argument goes to the existence of an agreement to arbitrate, not just the scope of what is arbitrable under that agreement, and said, nonetheless, the adoption of the unsatural rules gives that issue to the tribunal. So here, again, Your Honors, Ecuador got what it bargained for. It bargained for a tribunal decision on arbitrability. That decision was unanimous. It was well-reasoned. It was thorough. It's been upheld by the Dutch trial court, the Dutch Court of Appeal, and the Dutch Supreme Court. The Netherlands is the primary jurisdiction where the arbitration was seated. Their courts had greater authority over this award than U.S. courts do under the New York Convention in a confirmation proceeding like this. There's no basis at this point for this court to second guess or third or fourth guess whether under the guise of FSIA jurisdiction or as a merits issue under the New York Convention. Does the ICSID, is that the alternative, the main alternative? Yes. Do those provisions also provide for arbitrability to be determined by the arbitrator? I believe they do, Your Honor. I don't have the site handy because this case doesn't involve the ICSID rules, but I believe that's true, Your Honor. So if that's true, this is just sort of a question of context, but if that's true, if FONSA trial works that way and ICSID works that way and that sounds like that's the general domain, then why did the Supreme Court say that the default assumption is that the court determines the issues of arbitrability if in all the systems it actually turns out that the switch is flipped? It's a good question, Your Honor. I think maybe the answer has to do with when the court first said that, which was back some time now, maybe the court wasn't aware of the prevalence of FITs or other arbitration agreements that adopt arbitral institutional rules, whether it's ICC or UNCITRAL or the American Arbitration Association rules or others that give arbitrability to the tribunal. That issue wasn't directly presented when the Supreme Court first created this dichotomy of presumptions. So there's no, there are, pardon me, just about private agreements. I mean, nothing to do with countries. There's no arbitration association that, whose rules don't provide for arbitrability to be decided by the arbitrator and or even if that's true, can't the parties agree not to be bound by that particular provision? The first part of Your Honor's question, I don't know whether there's literally no rule of any institution. The common ones do provide for arbitrability to be decided by the tribunal. I can't say there isn't one that doesn't. Regardless of whether it involves a state or not? Yes, yes. And again, the Supreme Court and BG Group made the point that it doesn't really matter whether it's a treaty with the state or whether it's a private agreement. No, no, I'm just asking where there are, in other words, you can imagine that the presumption is that the scope is for the court and not for the arbitrator if in non-state circumstances that was the general rule because they're not stating a general rule for states. They're stating a general rule over all. But you're telling me there aren't any arbitration rules regardless or very few that leave that out? I can't tell you there aren't any literally. But to answer the second part of Your Honor's question, the uncontrollable rules in Article I permit parties to vary the uncontrollable rules. So you can adopt the uncontrollable rules but not Article 23. That would not give arbitrability to the tribunal. Right. So, you know, if Ecuador really wanted to ensure that a court would review arbitrability de novo, it could have written the bid differently. If Your Honors have no further questions, thank you very much. Your Honors, the fundamental flaw with Mr. Buchholz's argument on behalf of Chevron is that none of the cases that he's referred to, including an argument, not the Occidental v. Ecuador case, not the Dutch court review of the arbitration award, none of them involve the presumptions that Congress imposed under the Sovereign Immunities Act. And it is those presumptions that come into play. What do you say to the argument that the reason is nobody has ever thought that this is a question of sovereign immunity at all, that everybody else has always understood that it's not? Why is this the first case to raise this? Phoenix Consulting was the first case. Phoenix Consulting said, Angola said, we are not subject to the FSIA provision on arbitration because we didn't enter into that agreement. It's a fraud. In the other cases... Well, I think if you made a fraud argument, everybody would be with you here. Right. But you're not making that argument. Right. Well, you're asking why haven't other counsel for other states raised the argument? With respect to scope, yeah. Because it's with respect to formation, Your Honor. And in the other cases that are in the briefs, the formation of the contract was not in dispute. Schneider v. Thailand is the closest case in the briefing, and yet a close reading of the case shows that remarkably, counsel did not argue under the FSIA. Counsel in that case accepted that there was an agreement to arbitrate and asked the court to look at the standard terms for reviewing an arbitration award. All of the other cases, apart from Phoenix, involved the standard rules for reviewing an arbitration award. What about the Ecuador case in the Second Circuit? Ecuador v. Chevron, the case was brought by Ecuador. Sovereign immunity was not at issue. It never is when a sovereign initiates suit. And so anything that the court said in that case had to do with Ecuador's cause of action, which was to enjoin a litigation. Other questions? Thank you very much. We'll take the matter under submission.
judges: Garland, Srinivasan, Wilkins